## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**SHANDRELL M. J. PRIVOTT**

      **Plaintiff,**

    v.

**CITY OF NEW ORLEANS and REGIONAL TRANSIT AUTHORITY**

      **Defendant.**

**CIVIL NO. 2:23-CV-1848**

## COMPLAINT

Plaintiff Shandrell M. J. Privott asserts her causes of action against defendants City of New Orleans and the Regional Transit Authority as follows:

### THE PARTIES

1.    Plaintiff is Shandrell M. J. Privott. She is 44-year-old woman. She is Black. She lives in Slidell, St. Tammany Parish, Louisiana with her family.

2.    Defendant is City of New Orleans (hereinafter **"the City"**). The City is a political subdivision of the State of Louisiana. *See* La. Rev. Stat. Ann. § 13:5102(B)(1) ("'political subdivision' means any . . . municipality"). The City's chief executive officer is its mayor, Latoya Cantrell. The City is organizationally divided into many departments. One of those departments is the City of New Orleans Department of Police (hereinafter **"NOPD"**).

3.    Defendant is Regional Transit Authority (hereinafter "**the RTA**"). The RTA is a political subdivision of the State of Louisiana. La. Rev. Stat. Ann. § 48:1654. The RTA is capable of being sued in its own name. La. Rev. Stat. Ann. § 48:1656(1).

1

## JURISDICTION AND VENUE

4.     The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-2 (Title VII discrimination), and 42 U.S.C. § 2000e-3 (Title VII anti-retaliation) as more particularly set-out herein.

5.     The Court has supplemental, subject-matter jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to plaintiff's federal law claims that they form part of the same case or controversy as more particularly set-out herein.

6.     The Court has personal jurisdiction over City of New Orleans because it is a political subdivision of the State of Louisiana domiciled within this judicial district (specifically, within Orleans Parish).

7.     The Court has personal jurisdiction over Regional Transit Authority because it is a political subdivision of the State of Louisiana domiciled within this judicial district (specifically, within Orleans Parish).

9.     Venue for plaintiff's Title VII claims is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) because (1) the unlawful employment practices alleged herein were committed within this judicial forum (specifically, Orleans Parish), (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, Orleans Parish), and (3) but for the unlawful employment practice, plaintiff would have been employed in this district (specifically, Orleans Parish).

10.     Venue for plaintiff's supplemental state-law claims is proper in this Court

pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged in this case occurred in this judicial forum (specifically, Orleans Parish) and plaintiff suffered her injuries and damages in this judicial forum (same).

## PROCEDURAL AND STATUTORY REQUIREMENTS

### A.   Facts Related to Statutory Coverage

8.   This case arises under Title VII of the Civil Rights Act (as amended).

9.   As described throughout this complaint, Sgt. Privott alleges her supervisor at the RTA, its Chief Security Officer Robert Hickman, sexually harassed her by routinely propositioning her for sex over the course of many months along with other, overtly harassing behavior.  Sgt. Privott alleges both the RTA and the NOPD discriminated against her based on her sex, and retaliated against her after she complained about Hickman's harassment, by terminating her joint employment as the RTA's "Transit Police Unit Commander."

10.   The City employed more than 500 employees every week of 2019, 2020, 2021, and 2022.

11.   From 2002 through the present, the City paid Sgt. Privott compensation and, in return, received her labor and services as an employee.

12.   Thus, the City is a covered employer under Title VII and the Louisiana Employment Discrimination Law.

13.   The RTA employed more than 500 employees every week of 2019, 2020, 2021, and 2022.

14.   From December 2019 until March 2022, the RTA paid Sgt. Privott

3

compensation and, in return, received her labor and services as an employee.

15.     Thus, the RTA is a covered employer under Title VII and the Louisiana Employment Discrimination Law.

**B.     Facts relating to Joint Employment**

16.     The City hired Sgt. Privott as a police officer assigned to NOPD on May 12, 2002.

17.     On December 6, 2019, the City loaned Sgt. Privott to the RTA to serve as the RTA's "Transit Police Unit Commander."

18.     From December 6, 2019 through March 17, 2022, Sgt. Privott was the joint employee of both the City and the RTA.

19.     During her joint employment, Ms. Privott reported directly to both RTA's "Chief Security Officer" Robert Hickman as well as NOPD's Assistant Commander of the Special Operations Division.

20.     During her joint employment, the City directly paid Sgt. Privott her regular, hourly wages, and RTA directly paid Sgt. Privott additional wages for every hour she worked as the RTA's Transit Police Unit Commander.

21.     During her joint employment, Sgt. Privott reported to work at the RTA's office located on Desire Street in New Orleans.  Sgt. Privott communicated through an official RTA email account.  The RTA provided Sgt. Privott with an unmarked RTA vehicle for her professional and personal use.  Under RTA policy at the time, only employees (like Sgt. Privott) were allowed to drive and use RTA vehicles for professional and personal use.  In contrast, under RTA policy at the time,

independent contractors were not allowed to drive RTA vehicles. Sgt. Privott took direction in her day-to-day tasks from both her NOPD and RTA supervisors, including completing tasks and work assigned to her by RTA's Chief of Security. Investigations into Sgt. Privott's complaints of sexual harassment were conducted by the RTA.

22.    On February 14, 2022, the RTA formally requested that the City, through the NOPD, remove and replace Sgt. Privott as RTA's Transit Police Unit Commander.

23.    The City, through NOPD, agreed and did remove and replace Sgt. Privott.

24.    On or about March 17, 2022, NOPD officials informed Sgt. Privott she was removed from her position with RTA and would be reassigned to another position at NOPD. NOPD did reassign Sgt. Privott to NOPD's 6th District effective March 27, 2022.

**C.    Facts Related to Exhaustion of Administrative Remedies**

25.    On December 17, 2021, Sgt. Privott filed a Charge of Discrimination with the EEOC (Charge No. 461-2021-02088) alleging that the RTA had discriminated against her based on her sex and retaliated against her because of her complaints about Robert Hickman's sexual harassment. Sgt. Privott's charge was timely filed within 300 days of the last of Mr. Hickman's continuing acts of sexual harassment and punishment for rebuffing his advances (the RTA and NOPD's attempt to remove Sgt. Privott from her position as Transit Police Unit Commander on April 30, 2021).

26.    On March 17, 2022, the same day NOPD removed her from her position as RTA's Transit Police Unit Commander, Sgt. Privott filed a second Charge of

Discrimination with the EEOC (Charge No. 461-2022-01100) alleging that NOPD likewise discriminated against her based on her sex and retaliated against her because of her complaints about Mr. Hickman's harassment. Sgt. Privott's charge was timely filed within 300 days of NOPD's decision to terminate Sgt. Privott from her position as RTA's Transit Police Unit Commander (on or about March 17, 2022).

27.    On March 31, 2022, Sgt. Privott filed a third Charge of Discrimination with the EEOC (Charge No. 461-2022-01145) alleging with particularity that the RTA demanded and caused her to be terminated from her position as Transit Police Unit Commander because of her prior complaints about Mr. Hickman's harassment and because of the prior Charges of Discrimination she filed against RTA. Sgt. Privott's charge was timely filed within 300 days of the RTA's demand to the City, through the NOPD, made on February 14, 2022, to terminate Sgt. Privott from her position as Transit Police Unit Commander.

28.    On March 31, 2022, Sgt. Privott filed a fourth Charge of Discrimination with the EEOC (Charge No. 461-2022-01146) alleging with particularity that NOPD terminated her from her position as Transit Police Unit Commander because of her prior complaints about Mr. Hickman's harassment and because of the prior Charges of Discrimination she filed against RTA and NOPD. Sgt. Privott's charge was timely filed within 300 days of her termination from her position as RTA's Transit Police Unit Commander (on or about March 17, 2022).

29.    On November 2, 2022, Ms. Privott timely amended her prior Charges of Discrimination, Nos. 461-2022-01146 and 461-2022-01100, clarifying that the correct

name of the respondent identified in those charges was the City of New Orleans (as opposed to the "New Orleans Police Department"). These amendments related back to the original filing dates of those charges as a matter of law.

30.     On March 24, 2023, the U.S. Department of Justice issued Sgt. Privott Notices of her Right to Sue for all her prior Charges of Discrimination (Nos. 461-2021-02088, 461-2022-01100, 461-2022-01145, and 461-2022-01146).

31.     Sgt. Privott timely filed this federal lawsuit within 90 days of receiving the DOJ's Notices of Right to Sue.

32.     Sgt. Privott timely filed this federal lawsuit after both the RTA and the City had at least 30 days' notice of each of her Charges of Discrimination filed against them.

## FACTS

**A.     The Transit Police Unit Commander Position**

33.     Sgt. Privott is a career law enforcement officer who has served with the NOPD since 2002. She is an objectively excellent employee. Sgt. Privott has been promoted within NOPD on multiple occasions, including her promotion to the position of Sergeant and her promotion to the position of Transit Police Commander of the RTA and NOPD. Sgt. Privott lives in Slidell with her husband and family.

34.     The NOPD is the City of New Orleans's primary law enforcement agency.

35.     The RTA is the local governmental entity responsible for servicing the public transportation needs of the City of New Orleans and surrounding parishes.

36.     The RTA borrows NOPD employees to police its facilities and conveyances.

The NOPD officers who are loaned to the RTA are called the "Transit Police Unit." One position within the Transit Police Unit is the "Transit Police Unit Commander." The RTA's Transit Police Unit usually operated pursuant to a set of policies called the "Transit Police Unit Standard Operating Procedures."  Relevant to this case, the RTA Chief of Security delegated the task of creating and revising these policies to Sgt. Privott in her capacity as the Transit Police Unit Commander, and thereafter the Chief of Security made various, final revisions.

37.    The RTA's "Transit Police Unit Commander" is the designated NOPD liaison to the RTA.  Per the Transit Police Unit procedures, the Commander reports to the RTA's "Chief Security Officer" and consults with him "on all matters regarding security and policing aboard [the RTA's] transit system."  Per policy, the Commander is ultimately "responsible for management of security and policing of [the RTA's] public transit system."  The Commander is assigned to work at RTA's office in New Orleans located on Desire Street.  The commander is assigned an official RTA email account.  The commander takes her day-to-day instruction from both her RTA and NOPD supervisors.

**B.    RTA's Chief Security Officer Sexually Harasses Sgt. Privott**

38.    Throughout Sgt. Privott's joint employment at the RTA, the RTA's Chief Security Officer was Robert Hickman.

39.    Prior to her joint employment at the RTA, Sgt. Privott and Mr. Hickman had dated each other.

40.    Sgt. Privott ended her romantic relationship with Mr. Hickman in

approximately August 2018.

41.     Immediately after Sgt. Privott began her joint employment at the RTA in December 2019, Mr. Hickman began propositioning Sgt. Privott for sex and otherwise harassing her.

42.     Specifically, from approximately December 2019 through December 2020, Mr. Hickman engaged in the following, unwelcome harassment:

- Hickman routinely demanded sex from Sgt. Privott while they were at work;

- Hickman exposed his penis to Sgt. Privott while they were at work;

- Hickman approached Sgt. Privott from behind while at work, grabbed her, and rubbed his penis through his clothing on Sgt. Privott's backside;

- Hickman routinely texted Sgt. Privott sexually explicit material;

- Hickman routinely talked to Sgt. Privott while at work about sexually explicit topics; and,

- Hickman permeated Sgt. Privott's workplace with unwelcome, sexual harassment.

43.     Sgt. Privott rebuffed each of Mr. Hickman's advances.  Each of his advances were unwelcome.  Sgt. Privott never had sex with Mr. Hickman.  Sgt. Privott told Mr. Hickman she would not resume a romantic relationship with him.  Sgt. Privott endured this harassment because she feared reprisal if she reported Mr. Hickman to her RTA or NOPD supervisors.

44.     By the end of December 2020, Mr. Hickman finally stopped propositioning Sgt.

Privott for sex.  Instead, Mr. Hickman began punishing Sgt. Privott for rebuffing his advances and in a further attempt to coerce her into sex.  From approximately December 2020 through May 2021, Mr. Hickman engaged in the following acts of retaliation:

- Hickman reprimanded Sgt. Privott for no reason;

- Hickman criticized Sgt. Prviott's work to others for no reason;

- To the best of Sgt. Privott's understanding, Hickman asked RTA or NOPD decision-makers to remove Sgt. Privott from her position at the Transit Police Unit Commander;

- Hickman meddled in Sgt. Privott's work and insisted that she perform her work in unauthorized ways; and,

- Hickman was rude, unprofessional, and discourteous to Sgt. Privott.

45.    Hickman engaged in each of these acts of retaliation for the purpose of either forcing Sgt. Privott to resign as the Transit Police Unit Commander, submitting to his prior advances, or convincing RTA and NOPD decision-makers to terminate her from the position.

**C.    Sgt. Privott Complains**

46.    On April 30, 2021, Sgt. Privott's immediate supervisor at NOPD, Lt. Kenny Prepetit, informed her that "chain of command" had instructed him to advertise a job opening for Sgt. Privott's Transit Police Unit Commander position.

47.    Based on all the facts and evidence available to her, Sgt. Privott alleges Mr. Hickman successfully lobbied both the RTA and the NOPD to terminate Sgt. Privott's

joint employment as the RTA's Transit Police Unit Commander as punishment and retaliation for rebuffing his repeated, sexual advances.

48.    That same day, on April 30, 2021, Sgt. Privott had a face-to-face meeting with NOPD Superintendent Shaun Ferguson.

49.    Sgt. Privott explained the details of Mr. Hickman's harassment to Chief Ferguson along with her fears that the RTA and NOPD were about to terminate her joint employment as the Transit Police Unit Commander.

50.    Chief Ferguson told Sgt. Privott he did not want to intervene or involve himself because he feared the "political" ramifications of doing so.   Specifically, Chief Ferguson told Sgt. Privott he worried that the RTA's Chief Executive Officer, Alex Wiggins, might complain to Mayor LaToya Cantrell if Chief Ferguson refused to assign a new NOPD officer to the position of Transit Police Unit Commander.   Chief Ferguson also indicated he felt he had no ability to protect Sgt. Privott from Hickman's continued harassment and retaliation at the RTA.   Chief Ferguson suggested that Sgt. Privott simply go along with the RTA's proposed termination, or otherwise report the matter to the EEOC.

51.    Sgt. Privott refused to acquiesce to the RTA's harassment and the NOPD's refusal to act.

52.    On May 4, 2021, Sgt. Privott complained to Mayor LaToya Cantrell's office, again describing Mr. Hickman's harassment, retaliation, and the attempt to terminate her from the Transit Police Unit Commander position.

53.    To the best of Sgt. Privott's knowledge, Mayor Cantrell then requested that the

RTA investigate the matter.

**D.   The RTA and the NOPD Circle the Wagons**

54.   Shortly after May 4, 2021, the RTA did purport to investigate Sgt. Privott's complaint.

55.   The RTA hired a local law firm, Boykin and Utley, APLC, to investigate. Attorney Kriste Utley led the investigation.

56.   On or about May 20, 2021, Ms. Utley interviewed Sgt. Privott about her complaint.   NOPD's Assistant Superintendent for its Public Integrity Bureau, Arlinda Westbrook, sat in on the interview.

57.   Sgt. Privott fairly participated in the interview.

58.   Sgt. Privott provided the RTA's investigators with evidence she had gathered in support of her complaint.

59.   Ultimately, Sgt. Privott described the nature of Mr. Hickman's unwelcome harassment, punishment, and retaliation, among many other items.

60.   On November 23, 2021, the RTA, through its attorney Kriste Utley, informed the NOPD Assistant Superintendent Arlinda Westbrook that it had completed its investigation into Sgt. Prviott's complaints.

61.   Ms. Utley indicated that "Sgt. Privott's claims of harassment against Chief Hickman could not be substantiated."   Ms. Utley indicated that the RTA had therefore closed its investigation into the matter.

62.   Ms. Utley indicated that the RTA's investigation had been performed "in anticipation of litigation" and therefore the RTA refused to produce to the NOPD the

substance of its investigation, the merits of its conclusion that Sgt. Privott had not been harassed or retaliated against, or the evidence upon which that conclusion was based.

63.     The NOPD did not conduct any independent investigation into Sgt. Privott's complaints of sexual harassment and retaliation.  The NOPD made no conclusions or findings of fact of its own.  The NOPD relied exclusively on the RTA's perfunctory conclusion that Sgt. Privott had not been sexually harassed or retaliated against and accepted that conclusion as true without the benefit of first reviewing any of the evidence that the RTA had collected (which the RTA apparently refused to produce to the NOPD based on the assertion of work-product doctrine and attorney-client privilege).

64.     On or about December 1, 2021, Sgt. Privott was first informed that the RTA did not substantiate her complaints of sexual harassment retaliation, and the RTA had closed its investigation.

65.     On December 17, 2021, Sgt. Privott filed a Charge of Discrimination with the EEOC against the RTA (Charge No. 461-2021-02088) alleging Mr. Hickman had sexually harassed her at work; punished her for rebuffing his advances, and attempted to replace her as the Transit Police Unit Commander.

**E.     The RTA and NOPD Terminate Sgt. Privott's Joint Employment**

66.     After the RTA began its investigation into Sgt. Privott's complaint, it temporarily reassigned Mr. Hickman to a different RTA office location, and the RTA required both Sgt. Privott and Mr. Hickman to communicate about work matters

through an RTA intermediary.

67.     Despite these circumstances, Sgt. Privott continued to successfully perform all her required and assigned work as the RTA's Transit Police Unit Commander.

68.     Neither the RTA nor the NOPD ever alleged that Sgt. Privott could not or did not successfully perform her duties as Transit Police Unit Commander.

69.     Nevertheless, on February 14, 2022, less than two months after Sgt. Privott filed her Charge of Discrimination against the RTA, the RTA Human Resources Officer, Darwyn Anderson, sent a letter to NOPD Assistant Superintendent Arlinda Westbrook.  In that letter, the RTA formally requested that NOPD "remove and replace" Sgt. Privott as the RTA Transit Police Unit Commander.

70.     In its February 14, 2022 letter, the RTA indicated that it no longer wanted to assign Mr. Hickman to a different office location or require Sgt. Privott and Mr. Hickman to communicate through an RTA intermediary.  The RTA concluded that it "cannot continue to sustain having Sgt. Privott in her role as NOPD's Transit Liason; as such we formally request that she be removed and replaced expeditiously."

71.     The RTA's stated reasons to terminate Sgt. Privott were mere pretext to cover up for its illegal sex discrimination, sexual harassment, and retaliation.

72.     Specifically, no one from the RTA ever asked Sgt. Privott if she preferred to be terminated rather than resume her direct communication with Mr. Hickman.  Rather than terminating Sgt. Privott, the RTA could have simply instructed Mr. Hickman to refrain from sexually harassing Sgt. Privott or retaliating against her.  Rather than terminating Sgt. Privott, the RTA could have simply required both Mr. Hickman and

Sgt. Privott to complete mandatory training into anti-harassment and retaliation practices. Rather than terminating Sgt. Privott, the RTA could have simply monitored Mr. Hickman and Sgt. Privott's work relationship for a reasonable period of time in the future. Rather than terminating Sgt. Privott, the RTA could have simply instructed Sgt. Privott to immediately report any future instances of sexual harassment or retaliation to RTA's human resources department. Rather than terminating Sgt. Privott, the RTA could have simply engaged in any of the reasonable, remedial measures that employers routinely take after an employee complaints about sexual harassment in the workplace.

73.     The RTA did none of this. Instead, the RTA simply demanded that the City, through the NOPD, terminate and replace Sgt. Privott as the RTA's Transit Police Unit Commander. The RTA took these actions because of the same sex discrimination, sexual harassment, and retaliation Sgt. Privott had alleged against the RTA in her December 17, 2021 Charge of Discrimination.

74.     Specifically, the RTA refused to discipline Mr. Hickman or protect Sgt. Privott from his harassment and punishment in retaliation against her for complaining about Mr. Hickman's in the first place.

75.     Likewise, the RTA demanded Sgt. Privott's termination in retaliation against her for complaining about Mr. Hickman's harassment and punishment in the first place.

76.     Additionally or alternatively, the RTA demanded Sgt. Privott's termination simply because it had actually concluded Mr. Hickman had, in fact, sexually harassed

Sgt. Privott and punished her for rebuffing his advances, but the RTA preferred to keep Mr. Hickman as an employee versus Sgt. Privott.

77.     The City, through the NOPD, acquiesced to the RTA's request and did terminate Sgt. Privott's joint employment as the RTA's Transit Police Unit Commander.

78.      The NOPD informed Sgt. Privott her joint employment was terminated on or about March 17, 2022.

79.     The NOPD reassigned Sgt. Privott to its 6th District effective on or about March 27, 2022.

80.     At no time did the NOPD attempt to conduct its own investigation into Sgt. Privott's complaints of sexual harassment or retaliation.

81.     Finally, in November 2021, prior to her termination, the RTA informed Sgt. Privott without substantive reason that she was not eligible for extra duty shifts as a Transit Unit officer.  Based on all the facts and circumstances of the matter, Sgt. Privott alleges the RTA precluded her from working these extra duty shifts based on the same discriminatory and retaliatory animus described throughout this complaint.

**F.     The RTA and NOPD Replace Sgt. Privott with a Man and Change Their Polices**

82.     The NOPD replaced Sgt. Privott in her position as the RTA's Transit Police Unit Commander with a man.

83.     Based on the all the facts and circumstances available to her, Sgt. Privott alleges the RTA and NOPD selected a man to replace her because both entities knew or believed that Mr. Hickman sexually harassed Sgt. Privott and was at risk to

sexually harass any woman who might have replaced Sgt. Privott.

84.     Based on the email evidence Sgt. Privott has already reviewed, the RTA and NOPD changed the job description of the RTA's Transit Police Unit Commander after they terminated Sgt. Privott's joint employment.   Specifically, Sgt. Privott's replacement was no longer required to liaise with Mr. Hickman as Chief Security Officer.  Instead, the Transit Police Unit Commander liaised directly with the Chief Executive Officer of the RTA.

85.     Based on the all the facts and circumstances available to her, Sgt. Privott alleges the RTA and NOPD changed these policies because they knew or believed that Mr. Hickman sexually harassed Sgt. Privott and was at risk to sexually harass any woman who might have replaced Sgt. Privott.

**G.     The Aftermath**

86.     The defendants' unlawful employment actions described throughout this complaint, culminating in the termination of Sgt. Privott's joint employment, has caused her significant lost wages, both arising from the loss of her position as Transit Police Unit Commander and the discriminatory and retaliatory denial of her request for extra duty shifts with the RTA.

87.     Sgt. Privott suffers from Lupus.  The defendants' unlawful employment actions described throughout this complaint, culminating in the termination of Sgt. Privott's joint employment, has caused her significant physical injury, emotional distress, mental anguish, loss of enjoyment of life, loss of reputation, and other compensatory damages.   Specifically, in both 2021 and after the termination of her joint

employment, Sgt. Privott suffered significant exacerbation of her Lupus, including significant pain, swelling, and related sequelae.  Sgt. Privott also suffered from symptoms of anxiety and depression.  Sgt. Privott actively treated for these conditions, and ultimately took approximately one year of approved sick leave from NOPD to recuperate, from approximately March 2022 until March 2023  In addition to her pain and suffering caused by defendants' unlawful employment actions, Sgt. Privott specifically claims reimbursement of these sick leave days she was forced to use because of defendants' unlawful conduct.

88.    The defendants' unlawful employment actions described throughout this complaint, culminating in the termination of Sgt. Privott's joint employment, have caused her significant out of pocket expenses, other monetary damages, costs, and attorney's fees incurred in litigating this matter.

## CAUSES OF ACTION

### Count 1:    Disparate-Treatment    Retaliation    Because    of    Protected Activities under Title VII against the RTA

89.    Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment retaliation because of protected activities under Title VII against the RTA.

90.    An employer may not discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice under [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §2000e-3(a).  In a retaliation case, "an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might

well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  Under Title VII, an employer remains vicariously liable for the acts of its decision-maker when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).  A public employer who violates Title VII is liable for the victim's back wages, front wages, reinstatement, statutory damages, attorney's fees, and litigation costs.

91.     Plaintiff re-incorporates by reference here all the factual allegations of her complaint.

92.     Sgt. Privott served as the joint employee of both the NOPD and the RTA.  Sgt. Privott was paid an hourly rate directly from both the NOPD and the RTA.  Sgt. Privott reported to work at the RTA office on Desire Street in New Orleans.  Sgt. Privott communicated through an official RTA email address.  The RTA provided Sgt. Privott with an RTA vehicle for her professional and personal use.  Sgt. Privott took direction in her day-to-day tasks from both her NOPD and RTA supervisors. Sgt. Privott's work equally benefited the RTA and the NOPD.  The RTA conducted the

investigation into Sgt. Privott's complaint of workplace sexual harassment. The RTA requested that NOPD terminate her as the Transit Police Unit Commander, and the NOPD did so.

93.     Sgt. Privott engaged in at least two, protected activities under Title VII. First, on April 30 and May 4, 2021, she complained to NOPD Chief Ferguson and New Orleans Mayor LaToya Cantrell about Robert Hickman's sexual harassment and the RTA and NOPD's attempt to terminate her from her job as Transit Police Unit Commander. Second, on December 17, 2021, she filed a Charge of Discrimination with the EEOC (Charge No. 461-2021-02088) alleging that the RTA had discriminated against her based on her sex and retaliated against her because of her complaints about Mr. Hickman's sexual harassment.

94.     Throughout her entire joint employment, Sgt. Privott successfully served in her job as Transit Police Unit Commander. RTA finished its investigation into Sgt. Privott's complaints on or about November 23, 2021. Sgt. Privott continued to successfully serve in her position. However, on February 14, 2022, less than two months after she filed her Charge of Discrimination against the RTA, the RTA requested that NOPD "expeditiously" remove and replace Sgt. Privott as the Transit Police Unit Commander. Likewise, in November 2021, during the RTA's investigation of Sgt. Privott's complaint to Chief Ferguson and Mayor Cantrell, she learned that RTA had prohibited her from taking extra duty shifts as a Transit Police Unit officer.

95.     For all the reasons described throughout this complaint, the RTA's stated

reasons for demanding Sgt. Privott's termination were mere pretext to cover up its retaliatory animus. Sgt. Privott alleges the RTA demanded and caused her termination because she complained about unlawful sex discrimination and retaliation to Chief Ferguson, to Mayor Cantrell, and to the EEOC. Sgt. Privott alleges the RTA caused her termination because, but-for the RTA's demand to the NOPD, the NOPD would not have terminated and replaced Sgt. Privott as the RTA's Transit Police Unit Commander. Sgt. Privott alleges that, had she never complained about Robert Hickman's sexual harassment, the RTA would not have caused her termination.

96. Accordingly, the RTA is liable to Sgt. Privott for its retaliation against her in violation of Title VII of the Civil Rights Act of 1964, and owes Sgt. Privott all statutory and equitable remedies, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, statutory damages, and reasonable attorney's fees and litigation costs incurred in this matter.

**Count 2:    Disparate-Treatment Discrimination Based on Sex and Hostile Work Environment / Quid-Pro-Quo Harassment under Title VII against the RTA**

97. Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment discrimination based on sex and hostile work environment / quid-pro-quo harassment under Title VII against the RTA.

98. An employer may not discriminate against any employee on account of the person's sex. 42 U.S.C. §2000e-2(a)(1). One form of prohibited sex discrimination is the creation of a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477

U.S. 57, 66 (1986).  Although a plaintiff is not required to prove a prima facie case of discrimination at this stage of the proceeding, a plaintiff eventually proves a prima facie case of hostile work environment based on sexual harassment by showing "(1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).  A public employer who violates Title VII is liable for the victim's back wages, front wages, reinstatement, statutory damages, reasonable attorney's fees, and litigation costs.

99.    Plaintiff re-incorporates by reference here all the factual allegations of her complaint.

100.    Sgt. Privott served as the joint employee of both the NOPD and the RTA.  Sgt. Privott was paid an hourly rate directly from both the NOPD and the RTA.  Sgt. Privott reported to work at the RTA's office on Desire Street in New Orleans.  Sgt. Privott communicated through an official RTA email address.  The RTA provided Sgt. Privott with an RTA vehicle for her professional and personal use.  Sgt. Privott took direction in her day-to-day tasks from both her NOPD and RTA supervisors. Sgt. Privott's work equally benefited the RTA and the NOPD.   RTA conducted the investigation into Sgt. Privott's complaint of workplace sexual harassment.   RTA requested that NOPD terminate her from her Transit Police Unit Commander position, and the NOPD did so.

101.   From approximately December 2019 through December 2020, RTA's Chief Security Officer, Robert Hickman, engaged in the following, unwelcome harassment:

- Hickman routinely demanded sex from Sgt. Privott while they were at work;

- Hickman exposed his penis to Sgt. Privott while they were at work;

- Hickman approached Sgt. Privott from behind while at work, grabbed her, and rubbed his penis through his clothing on Sgt. Privott's backside;

- Hickman routinely texted Sgt. Privott sexually explicit material;

- Hickman routinely talked to Sgt. Privott while at work about sexually explicit topics; and,

- Hickman permeated Sgt. Privott's workplace with unwelcome, sexual harassment.

102.   By the end of December 2020, Mr. Hickman finally stopped propositioning Sgt. Privott for sex.  Instead, Mr. Hickman began punishing Sgt. Privott for rebuffing his advances and in a further attempt to coerce her into sex.  From approximately December 2020 through May 2021, Mr. Hickman engaged in the following acts of retaliation:

- Hickman reprimanded Sgt. Privott for no reason;

- Hickman criticized Sgt. Prviott's work to others for no reason;

- To the best of Sgt. Privott's understanding, Hickman asked RTA or NOPD decision-makers to remove Sgt. Privott from her position at the Transit Police Unit Commander;

- Hickman meddled in Sgt. Privott's work and insisted that she perform her work in unauthorized ways; and,

- Hickman was rude, unprofessional, and discourteous to Sgt. Privott.

103.   Each act of Hickman's harassment and punishment was unwelcome by Sgt. Privott. Sgt. Privott subjectively felt harassed. Any reasonable employee would have felt harassed.   Mr. Hickman's harassment objectively destroyed Sgt. Privott's opportunity to succeed or perform her job at the RTA. And, whether as a result of so-called "hostile work environment" or "quid-pro-quo harassment," Hickman's harassment, rebuffed propositions for sex, and retaliation eventually and in-fact led to the RTA and NOPD's decision to terminate Sgt. Privott's joint employment.

104.   As the RTA's Chief Security Officer, the RTA assigned Mr. Hickman to the RTA Office of the CEO and Executive Leadership Team.  Mr. Hickman reported directly to RTA's Chief Executive Officer.  As alleged in this complaint, by April 30, 2021, after Sgt. Privott rebuffed Mr. Hickman's advances, he was eventually able to lobby the RTA and NOPD to remove and replace Sgt. Privott as the Transit Police Unit Commander.   The RTA and NOPD only paused Sgt. Privott's eventual termination because of her protected complaint to Chief Ferguson and Mayor Cantrell.  Robert Hickman was a senior, executive officer of the RTA, and the RTA had constructive or actual knowledge of his unwelcome sexual advances.

105.   Sgt. Privott did not complain about Mr. Hickman's harassment and punishment earlier than April 30 and May 4, 2021 because she was afraid that the RTA and NOPD would retaliate against her and terminate her, which is what they

eventually did.  In fact, Sgt. Privott's complaint to Chief Ferguson, Mayor Cantrell, and the EEOC was the catalyst for the RTA and NOPD's decision to terminate her joint employment as the RTA's Transit Police Unit Commander.

106.    Additionally or alternatively, based on the all the facts available to her, Sgt. Privott alleges the RTA would not have demanded and caused her termination if she were a man.  Specifically, the RTA's stated reason for terminating Sgt. Privott was because the RTA had finished its investigation, (pretextually) concluded that Mr. Hickman had not harassed Sgt. Privott, and the RTA could not continue to have Sgt. Privott and Mr. Hickman communicate about work matters through an RTA intermediary.  Sgt. Privott alleges the RTA only held this opinion because Sgt. Privott was a woman, and the RTA actually knew or believed that Mr. Hickman did harass her and was at risk for continuing to harass her in the future.  In other words, Sgt. Privott alleges the RTA believed that having any woman in the position of Transit Police Unit Commander put her at risk for sexual harassment, which was why Sgt. Privott's replacement was a man.

107.    Accordingly, the RTA is liable to Sgt. Privott for its discrimination against her in violation of Title VII of the Civil Rights Act of 1964, and owes Sgt. Privott all statutory and equitable remedies, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, statutory damages, and reasonable attorney's fees and litigation costs incurred in this matter.

**Count 3:** **Disparate-Treatment Discrimination, Harassment, and Retaliation under the Louisiana Employment Discrimination Law against the RTA**

108. Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment discrimination, hostile work environment / quid-pro-quo harassment, and retaliation under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*, against the RTA.

109. Under the LEDL, an employer may not discriminate against an employee based on her sex. La. Rev. Stat. Ann. § 23:332 *et seq.* An employer may not "retaliate . . . in any manner against a person because he has opposed a practice declared unlawful under [the LEDL]." La. Rev. Stat. Ann. § 51:2256 *et seq.* LEDL discrimination claims are analyzed under the analogous Title VII standard. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

110. Plaintiff re-incorporates by reference here all the factual allegations of her complaint.

111. Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims of unlawful disparate-treatment discrimination, sexual harassment, and retaliation against the RTA, the RTA is liable to Sgt. Privott for all her damages arising from the RTA's unlawful employment acts, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**Count 4:**   **Disparate-Treatment   Retaliation   Because   of   Protected Activities under Title VII against the City of New Orleans**

112.   Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment retaliation because of protected activities under Title VII against the City of New Orleans.

113.   Plaintiff re-incorporates by reference here all the factual and legal allegations of her complaint.

114.   Sgt. Privott was employed by NOPD, and jointly employed by the NOPD and the RTA, as the RTA's Transit Police Unit Commander.

115.   During the EEOC's investigation into this matter, Chief Shaun Ferguson, acting in his capacity as the agent of the City of New Orleans and chief executive officer of the NOPD, admitted to the EEOC in a signed position statement dated June 24, 2022, that the NOPD "acquiesced" to RTA's demand to terminate and replace Sgt. Privott as the RTA's Transit Police Unit Commander:

> "On completion of RTA's investigation, finding Privott's allegations against Hickman were not sustained, RTA requested NOPD move Privott away from her position in which she was supervised by Hickman.
>
> As Privott's employer, NOPD acquiesced to RTA's request and transferred Privott away from the position in which she was working with Hickman as her supervisor.

116.   An employer may not participate in a joint-employer's prohibited discrimination or retaliation, and an employer remains liable under Title VII for either its participation or its failure to "undertake prompt corrective measures within

its control." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228-29 (5th Cir. 2015).

117.   As alleged throughout this complaint, the NOPD had actual knowledge of Mr. Hickman's harassment and retaliation against Sgt. Privott at the latest on April 30, 2021 when Sgt. Privott directly complained to Chief Ferguson.  Ferguson told Sgt. Privott he would not intervene to protect her, and instead encouraged her to either accept the termination from her position as Transit Police Unit Commander or, otherwise, complain to the EEOC.  After Sgt. Privott complained to Mayor Cantrell's office, the NOPD admittedly failed to participate in the RTA's pretextual investigation into Sgt. Privott's complaints.   Finally, the NOPD admittedly "acquiesced" to the RTA's discriminatory and retaliatory demand to remove and replace Sgt. Privott from her position as Transit Police Unit Commander after the RTA admitted in its February 14, 2022 letter that it sought to remove and replace Sgt. Privott because the RTA preferred that Hickman no longer be required to work alongside Sgt. Privott, a clear admission to any reasonable entity that the RTA's request was because of unlawful discrimination and retaliation.   NOPD both participated in the RTA's unlawful employment acts and otherwise failed to take any correct measures within its control.

118.   Accordingly, the City of New Orleans is liable to Sgt. Privott for its retaliation against her in violation of Title VII of the Civil Rights Act of 1964, and owes Sgt. Privott all statutory and equitable remedies, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, statutory

damages, and reasonable attorney's fees and litigation costs incurred in this matter.

**Count 5:    Disparate-Treatment Discrimination Based on Sex and Hostile Work Environment / Quid-Pro-Quo Harassment under Title VII against the City of New Orleans**

119.    Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment discrimination based on sex and hostile work environment / quid-pro-quo harassment under Title VII against the City of New Orleans.

120.    Plaintiff re-incorporates by reference here all the factual and legal allegations of her complaint.

121.    Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims of unlawful disparate-treatment discrimination, sexual harassment, and retaliation against the RTA, along with plaintiff's claim for unlawful retaliation against the City of New Orleans, the City of New Orleans is also liable to Sgt. Privott for all her damages arising from the NOPD's discrimination against Sgt. Privott based on her sex, hostile work environment / quid-pro-quo sexual harassment, and complete failure to take prompt remedial measures to protect Sgt. Privott from the RTA's discrimination and harassment, ultimately resulting in Sgt. Privott's termination from her position as the RTA's Transit Police Unit Commander, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**Count 6:** **Disparate-Treatment Discrimination, Harassment, and Retaliation under the Louisiana Employment Discrimination Law against the RTA**

122.   Plaintiff Shandrell M. J. Privott states a cause of action for disparate-treatment discrimination, hostile work environment / quid-pro-quo harassment, and retaliation under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*, against the City of New Orleans.

123.   Under the LEDL, an employer may not discriminate against an employee based on her sex.  La. Rev. Stat. Ann. § 23:332 *et seq.*  An employer may not "retaliate . . . in any manner against a person because he has opposed a practice declared unlawful under [the LEDL]."  La. Rev. Stat. Ann. § 51:2256 *et seq.*  LEDL discrimination claims are analyzed under the analogous Title VII standard.  *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

124.   Plaintiff re-incorporates by reference here all the factual and legal allegations of her complaint.

125.   Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims of unlawful disparate-treatment discrimination, sexual harassment, and retaliation against the RTA and the City of New Orleans, the City of New Orleans is liable to Sgt. Privott for all her damages arising from the City's unlawful employment acts and failures to act, including her lost back wages, lost extra duty pay, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

## JURY DEMAND

Sgt. Privott requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Shandrell M. J. Privott prays that this complaint be deemed good and sufficient; that it and summons be served upon defendants City of New Orleans and Regional Transit Authority; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants:

1.   Under all causes of action, the entry of a declaratory judgment in favor of plaintiff and against all defendants declaring that the practices complained of in this complaint are unlawful under federal and state law and all defendants willfully, maliciously, or recklessly as the case may be violated the rights of plaintiff as alleged and proven.

2.   Under Title VII, awarding plaintiff all damages and equitable relief due against all defendants, including but not limited to back pay, front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

3.   Under the LEDL, awarding plaintiff all damages and equitable relief due against all defendants, including but not limited to back pay, front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

4.   Under all causes of action, awarding all other legal or equitable relief to which plaintiff is due against all defendants.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
_____
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Shandrell M. J. Privott*

**Clerk of Court: please hold issuance of summons pending plaintiff's attempt to secure waiver of service of summons**

DocuSign Envelope ID: 801343E5-C659-4E73-9BEE-F9BA319C7A56

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHANDRELL M. J. PRIVOTT** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. PENDING** |
| **CITY OF NEW ORLEANS and NEW ORLEANS REGIONAL TRANSIT AUTHORITY** | |
| **Defendant.** | |

## DECLARATION OF SHANDRELL M. J. PRIVOTT

I, Shandrell M. J. Privott, am 44 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1.      I am the named plaintiff in the lawsuit *Shandrell M. J. Privott v. City of New Orleans et al.*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2.      After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3.      I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

Executed by me on _6/1/2023_____

DocuSigned by:

140BB9B30F0D437...

Shandrell M. J. Privott