UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANDRELL M. J. PRIVOTT | CIVIL ACTION |
| VERSUS | NO: 23-1848 |
| CITY OF NEW ORLEANS, ET AL. | SECTION: "J"(5) |

### ORDER & REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 14)** filed by Defendant the Regional Transit Authority of New Orleans ("RTA"). Plaintiff Shandrell Privott has filed an opposition (Rec. Doc. 19) to which the RTA has replied (Rec. Doc. 23). Considering the motions, the memoranda, the record, and the law, the Court finds the motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Shandrell M. J. Privott has been employed by the New Orleans Police Department ("NOPD") since 2002 and is currently serving as a sergeant. From December 2019 until March 17, 2022, Plaintiff was assigned to serve as a Transit Police Unit Commander with RTA. RTA describes this as a "loan" while Plaintiff characterizes her time with RTA as joint employment. Plaintiff served in this role until RTA asked the NOPD to terminate her assignment and replace her with someone else. During the course of her assignment, Plaintiff alleges that her supervisor at RTA, Chief Security Officer Robert Hickman, sexually harassed her over a period of months, "routinely propositioning her for sex." (Rec. Doc. 1, at 3). After Plaintiff complained about this harassment, Plaintiff asserts she was retaliated against, discriminated against based on her sex, and wrongfully terminated from her

1

joint employment as the RTA's Transit Police Unit Commander. Plaintiff has now filed Title VII discrimination and retaliation claims and state law employment discrimination claims against the City of New Orleans and against the RTA. The RTA has now moved to dismiss the claims against it, arguing that Plaintiff was never an employee of the RTA and therefore that her employment claims against them must be dismissed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

**DISCUSSION**

Plaintiff has brought claims against the RTA under Title VII and under Louisiana Employment Discrimination Law, asserting that the RTA was her "joint employer" while she was on loan to them from the NOPD. The RTA has moved to dismiss these claims, arguing that the "joint employer" theory of liability is inapplicable to political subdivisions like the RTA.

Title VII serves to hold employers liable for discrimination against any individual on the basis of a number of protected categories including sex. Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year, and any agent of such person. . . ." 42 U.S.C. § 2000e(b). It is also possible for an entity to be held as an employer even if no traditional, direct employment relationship exists. However, the RTA asserts that the tests used by the Fifth Circuit to establish liability for these types of indirect employment, namely the single enterprise test and the joint employer test, are inapplicable to government entities.

In support of this assertion the RTA cites *Trevino v. Celanese Corp.* F.2d 397 (5th Cir. 1983). In *Trevino* the Fifth Circuit stated in a footnote that "[the single integrated enterprise test] is not readily applicable to governmental subdivisions, for it was 'developed by the National Labor Relations Board to determine whether consolidation of separate private corporations is proper in determining the relevant employer for purposes of enforcing the National Labor Relations Act.'" *Id.* at 404

3

fn.10. Although this language may fall "a little shy of a bright-line rule" *Dyas v. City of Shreveport*, 2017 WL 3711898, at *3 (W.D. La. Aug. 28, 2017), it has been restated by the Fifth Circuit and by District Courts within the Fifth Circuit. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 377, 344 (5th Cir. 2007); *Gogreve v. Downtown Development Dist.*, 426 F.Supp.2d 383, 390 (E.D. La. Mar. 30, 2006).

Additionally, in *Karagounis v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 1999 WL 25015, at *2 (5th Cir. 1999), the Fifth Circuit stated that the single employer or single enterprise test was very closely related to the joint employer test. The Court stated,

> Given the similarities between the two, we are constrained by *Trevino* to hold that the governmental subdivision rule we applied within the single employer doctrine also applies to the joint employer theory. To hold otherwise would, in effect, allow an end run around the precedent we established in *Dumas* and *Trevino*.

*Id.* Therefore, the RTA asserts that because it is a political subdivision of the State of Louisiana, Plaintiff cannot establish liability under either the single employer or joint employer test, and therefore the claims against the RTA must be dismissed as a matter of law.

Plaintiff does not dispute that the RTA is a political subdivision; however, Plaintiff asserts that even though she used the phrase "jointly employed" in her complaint, "she was, in fact, employed by the RTA in the traditional sense of the word." (Rec. Doc. 19, at 4-5). Plaintiff urges the Court to apply the hybrid economic realities/common law control test ("Hybrid Test") rather than the single enterprise or joint employment tests that the RTA asserts are relevant. Under the Hybrid Test, the Court must ask whether the putative employer has "[t]he right to control [the]

4

employee's conduct." *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993). This question calls the Court to focus on:

> whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule. The economic realities component of [the] test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Id.* Plaintiff alleges that she was supervised by RTA's Chief of Security, Robert Hickman, her alleged sexual harasser. Mr. Hickman assigned her tasks, and she received her day-to-day instructions from him. She reported to work at the RTA's office and used an RTA email account. It was the RTA who asked the NOPD to end Plaintiff's assignment as Transit Police Unit Commander. Plaintiff was also issued an RTA vehicle, and she was paid an hourly wage by the RTA on top of the hourly wages she earned through the NOPD.

Plaintiff asserts that these facts when taken as true are sufficient to support a finding that she was directly employed by the RTA for purposes of Title VII liability. Plaintiff would analogize her employment situation as one similar to an individual employed by a staffing agency who was then assigned to work at a different company such as the employee in *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015). The court in *Burton* found that even though the employee was technically employed by the staffing agency, the assignee company supervised the employee and could demand the employee's termination from the assignment. *Id.* at 227. The Fifth Circuit found that these facts were sufficient to support a finding that there was an

5

employment relationship on summary judgment using the Hybrid Test. Plaintiff asserts that her case, which is at the motion to dismiss stage rather than summary judgment, is even stronger than Burton's because in addition to the supervision, she was also paid a wage by the RTA.

Additionally, Plaintiff points out that the Hybrid Test should be employed before turning to either the joint employer or single employer test. "[T]he hybrid test should be used as an initial inquiry to resolve, if need be, whether a plaintiff is an employee of the defendant (or one of the defendants, in a multi defendant case) for the purposes of Title VII." *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997). Then, if the plaintiff is found to be an employee of one defendant under the Hybrid Test, the single or joint employer analysis can be used to determine whether an additional defendant can be considered an employer.

Before the Court is essentially an issue of semantics over the use of the word "joint". Plaintiff does repeatedly describe her employment situation in her complaint as joint. However, the use of this word alone is not enough to doom Plaintiff's complaint. The inquiry on a 12(b)(6) motion to dismiss is simply whether the Plaintiff has alleged facts sufficient to support her claims. In fact, the Court is instructed to ignore "'conclusory allegations or legal conclusions masquerading as factual conclusions [which] will not suffice to prevent a motion to dismiss.'" *Beavers*, 566 F.3d at 439 (citation omitted). The use of the word "joint" is such a legal conclusion—a fact

which the RTA clearly recognizes since they dedicate their motion to trying to defeat said legal conclusion.

Additionally, upon examination, the cases the RTA cites to support its contention that a government entity may not be held liable as a joint employer are distinguishable from the allegations in this case. In the cases cited by the RTA, none of the plaintiffs were "loaned out" by their parent entity to work for a separate government subdivision. For example in *Gogreve v. Downtown Dev. Dist.*, 426 F.Supp. 3d 383 (E.D. La. 2006), the court applied *Trevino* in finding that the plaintiff could not maintain a claim against the Downtown Development District Board of Directors when her actual employer was the Downtown Development District itself. The Board of Directors did not "loan" the plaintiff to the Downtown Development District, but instead was simply an administrative body overseeing its operations. Likewise in *Davis v. Gavin*, 2021 WL 3573040 (W.D. La. Aug. 12, 2021), the court dismissed a claim against Caddo Parish for an employee who was employed solely by the Sewerage District, which like the RTA, is a separate and independent legal entity. However, in *Davis*, there was no allegation that the plaintiff was loaned or assigned to work in the Sewerage District and instead was simply a direct and sole employee of the District itself rather than the parish.

Even *Trevino* and *Karagounis* can be distinguished in this way. In *Trevino*, the plaintiff was not suing any government entities at all, while in *Karagounis*, the plaintiff was employed by a hospital and attempted to extend his suit to the county hospital district that oversaw the hospital. Furthermore, the rationale behind the

7

non-aggregation rule established in these cases does not reasonably extend to this scenario. It seems clear that the Fifth Circuit intended to prevent plaintiffs in employment discrimination cases against governmental entities from bringing their claims up the administrative chain and suing supervising or superior governmental entities that could not be considered the plaintiff's direct employer.

Unlike in these cases and in the others relied upon by the RTA, Plaintiff in this case was loaned to the RTA, and during the period of her service there she was supervised, paid, and then terminated by the RTA, all of which are characteristics indicative of employment under the Hybrid Test. The Court does not need to resort to the aggregation tests suggested by the RTA which would be inapplicable to governmental entities. When looking past Plaintiff's misplaced legal conclusion of "joint" employment her complaint, Plaintiffs allegations satisfy the Hybrid Test for the purposes of this motion to dismiss. Likewise, this Court will not dismiss Plaintiff's state law discrimination claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion to Dismiss* **(Rec. Doc. 14)** is **DENIED**.

New Orleans, Louisiana, this 12th day of August, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE